UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELVIN PICKETT,<br><br>        Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of the<br>Social Security Administration,<br><br>        Defendant. | Case No. ED CV 07-1007 PJW<br><br>MEMORANDUM OPINION AND ORDER |

    Before the Court is Plaintiff's appeal of a decision by Defendant Social Security Administration ("the Agency"), denying his April 2005 applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Because the Agency's decision that Plaintiff was not disabled within the meaning of the Social Security Act is supported by substantial evidence, it is affirmed.

    On April 9, 2004, Plaintiff applied for DIB and SSI benefits. (Administrative Record ("AR") 84.) On October 14, 2004, those applications were denied. (AR 84.) Plaintiff did not appeal.

    On April 6, 2005, Plaintiff filed the current applications for DIB and SSI. In them, he alleged that he was disabled due to congestive heart failure, hypertension, and liver failure. (AR 77.)

The Agency denied the applications initially and on reconsideration. (AR 50-64.)  Plaintiff then requested and was granted a hearing before an Administrative Law Judge ("ALJ").  On January 26, 2007, Plaintiff appeared with counsel at the hearing and testified.  (AR 32-49.)  On February 8, 2007, the ALJ issued a decision denying the application. (AR 9-22.)  After the Appeals Counsel denied Plaintiff's request for review, (AR 4-7), he filed this action.

    Plaintiff claims that the ALJ erred when he failed to properly consider: 1) treating doctor Allison Yee's opinion that Plaintiff suffered from a liver condition; 2) another treating doctor's opinion that Plaintiff had suffered liver failure; 3) an examining psychiatrist's opinion that Plaintiff suffered from mental limitations; and 4) the severity of Plaintiff's mental impairments at step two.  For the reasons set forth below, the Court concludes that none of these claims warrants remand or reversal.

    In his first claim, Plaintiff contends that the ALJ did not properly consider a finding by treating physician Dr. Allison Yee that Plaintiff suffered from "diffuse hyperechogenicity present throughout [Plaintiff's liver] that may suggest fatty infiltration or cirrhosis."[1]  (AR 122.)  Plaintiff argues that Dr. Yee's finding "established that Plaintiff does indeed have damage to his liver (cirrhosis) that will bear a significant impact on his ability to work."  (Joint Stip. at 4.)  Plaintiff points out that "people who have cirrhosis may experience symptoms when liver damage is

---

[1]  "Echogenic" is defined as "containing structures that reflect high-frequency sound waves and thus can be imaged by ultrasound techniques."  *See* The American Heritage Medical Dictionary (2007), *at* medical-dictionary.thefreedictionary.com/echogenic.

extensive," such as edema, jaundice, or varices. (Joint Stip. at 3.) In Plaintiff's view, the ALJ was required to provide specific and legitimate reasons for disregarding Dr. Yee's opinion that he suffered from cirrhosis and his failure to do so necessitates remand. (Joint Stip. at 4.) For the following reasons, the Court disagrees.

First, Dr. Yee's evaluation was performed on February 10, 2004, two months before Plaintiff filed his first applications for DIB and SSI in April 2004, and ten months before the Agency denied those applications in October 2004. Thus, under the doctrine of res judicata, the ALJ was not required to reconsider the earlier finding of non-disability or Dr. Yee's findings that related to that period. *Taylor v. Heckler*, 765 F.2d 872, 876 (9th Cir. 1985).

Second, even were the Court to reach the merits of Plaintiff's claim, it would still conclude that the ALJ did not err. Dr. Yee's observation that the ultrasound "may suggest" that Plaintiff had a fatty liver and, perhaps, cirrhosis did not establish that he had a fatty liver or cirrhosis. It established that those possibilities were suggested. On July 3, 2005, Plaintiff underwent a series of blood tests to determine if he did suffer from these, or any other liver ailments, and the results established that he did not.[2] (AR 267.) In addition, Dr. Rocely Ella-Tamayo, a consultative doctor, performed an internal medicine evaluation of Plaintiff on July 2, 2005, and concluded that his condition was stable and that he had no significant functional impairments. (AR 15, 265.) Further, Dr. M.

---

[2] The tests that were performed are referred to as a Hepatic Function Panel. (AR 267.) This panel is a "group of seven tests used to evaluate the liver for injury, infection, or inflammation." *See* kidshealth.org/parent/infections/medical/labtest6.html.

Charoenrath reviewed the medical records and determined, among other things, that there were no signs of liver failure. (AR 15, 300, 301, 305.) Thus, the medical record does not support Plaintiff's claim that he suffered from cirrhosis or a fatty liver.

Moreover, Plaintiff's argument that cirrhosis may cause complications (i.e., edema, jaundice, and varices) that could interfere with his ability to work misses the point. Though these complications might impact a claimant's ability to work, Plaintiff is not alleging that he experienced any of them. Nor is there any evidence that he did. Thus, they are irrelevant.

Ultimately, the Court concludes that the ALJ did not err with regard to Dr. Yee's work. He identified Dr. Yee and set forth her findings. (AR 15-16.) That was all that he was required to do (assuming that the Court overlooks the fact that res judicata bars reconsideration of Dr. Yee's opinion, which was formulated before Plaintiff's last claim for benefits was filed and denied). The ALJ was not required to set forth reasons for rejecting her opinion because nothing she said was inconsistent with the ALJ's findings. *See Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (holding reasons are not required when there is no conflict between the ALJ's findings and the doctor's opinion). For these reasons, this claim is denied.

Plaintiff next contends that the ALJ erred by failing to discuss the opinion of another "treating physician" from Riverside County Regional Medical Center. (Joint Stip. at 7-8.) This doctor, whose signature is illegible, examined Plaintiff in December 2004 for lesions on his penis, scrotum, and perineum, and recommended treatment with liquid nitrogen. (AR 208.) The doctor described Plaintiff as:

1  "[Patient with congestive heart failure], liver failure, emphysema[.]"
2  (AR 208.)  Plaintiff claims that this notation amounts to a treating
3  doctor's opinion that Plaintiff suffered from liver damage.  He faults
4  the ALJ for not addressing this opinion in his decision.  (Joint Stip.
5  at 8.)  There is no merit to this claim.
6      This note, from an unidentified doctor who was treating Plaintiff
7  for an acute outbreak of genital warts, does not constitute a treating
8  doctor's opinion that Plaintiff suffered from liver failure.  Clearly,
9  it was noted in the context of Plaintiff's medical history and was,
10 presumably, information provided by Plaintiff.  (AR 208.)  Further,
11 the doctor did not perform any testing to analyze Plaintiff's liver
12 function, nor was Plaintiff's visit intended to initiate such testing.
13 Thus, the ALJ's failure to discuss this "opinion" does not amount to
14 error.  *See, e.g., Ukolov v. Barnhart*, 420 F.3d 1002, 1004-05 (9th
15 Cir. 2005) (holding that ALJ did not err in failing to address
16 treating physician's statement, unsupported by medical signs in the
17 record, that claimant had gait and imbalance difficulties).
18     In his third claim of error, Plaintiff contends that the ALJ
19 failed to properly consider the opinion of Dr. Romualdo Rodriguez, who
20 conducted a psychiatric evaluation of Plaintiff on July 2, 2005, and
21 determined that he "would not trust [Plaintiff] with funds because of
22 his marijuana and alcohol problems."  (Joint Stip. at 9-10; AR 258.)
23 Plaintiff contends that the ALJ "selectively omitted" this limitation
24 from his decision, which, he argues, "in combination with so many
25 minimal limitations" found by Dr. Rodriguez, established that
26 Plaintiff was incapable of working.  (Joint Stip. at 10.)  Again, the
27 Court disagrees.
28

Dr. Rodriguez's determination that he would not trust Plaintiff with money did not establish that Plaintiff had a mental limitation. It established that Dr. Rodriguez believed that Plaintiff's long-standing drug and alcohol addictions would interfere with his ability to take care of money. Presumably, the doctor suspected that if Plaintiff was given money he would be tempted to purchase alcohol or drugs with it. Importantly, Dr. Rodriguez found that Plaintiff was alert and oriented to time, place, person, and purpose, and that he had reasonable insight. (AR 256-57.) He found that Plaintiff would be able to cope with simple one- or two-step job instructions, as well as "do detailed and complex instructions." (AR 258.) And he concluded that Plaintiff was only minimally limited in his functional abilities. (AR 258.) Plaintiff's argument that Dr. Rodriguez's findings suggest an inability to work that was overlooked by the ALJ has no basis.

The Court also notes that Dr. Rodriguez's opinion regarding Plaintiff's mental functioning was not the only one in the record. Two state agency reviewing psychiatrists also looked at the medical records and determined that Plaintiff was not limited. (AR 181-94, 308-21.) This view was also shared by Plaintiff's counselor, who he had been seeing for therapy. (AR 249-51.) In fact, all of the evidence in the record supports the ALJ's view that Plaintiff was not restricted due to any mental impairments. For these reasons, the Court concludes that the ALJ did not err here.

In his fourth claim of error, Plaintiff contends that the ALJ erred when he concluded at step two that Plaintiff did not have a severe mental impairment. Plaintiff claims that the ALJ ignored the "several minimal limitations" assessed by Dr. Rodriguez which,

together with the inability to be trusted with funds, demonstrated that his mental impairment had more than a minimal effect on his ability to do basic work activities. (Joint Stip. at 12-13.) There is no merit to this claim.

At step two of the sequential evaluation process, an ALJ must determine whether a claimant has a severe impairment. A severe impairment is one that has more than a minimal effect on a claimant's ability to work. *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

When Plaintiff applied for benefits, he did not allege that he was disabled as a result of any mental or emotional impairment. (AR 77.) He alleged that he was limited due to physical complaints. (AR 77.) Despite this fact, the Agency sent him to a psychiatrist, Dr. Rodriguez--the same psychiatrist who had evaluated him for his prior disability case--for an evaluation. (AR 174-81, 252-59.) Dr. Rodriguez found that Plaintiff did not have a mental impairment that would prevent him from working. This conclusion was consistent with the conclusions of the reviewing doctors and Plaintiff's therapist. Thus, the ALJ did not err in not finding at step two that Plaintiff had a severe mental impairment.

Plaintiff disagrees. He points out that Dr. Rodriguez noted some minimal limitations in his report and argues that those findings, combined with his finding that Plaintiff should not handle funds, were

enough to trigger a finding at step two that Plaintiff had a severe mental impairment.[3] There is no support for this argument in the record.

A fair reading of the medical records from the mental health professionals who provided input in this case establishes that Plaintiff did not suffer from any mental limitations, particularly any that would limit his ability to work. In fact, as the ALJ found (and Plaintiff has not challenged) he was working two jobs at the time he testified at the hearing. (AR 20, 36-37.) Nothing in this record suggests that Plaintiff had any mental impairment, never mind one that was severe enough to interfere with his ability to work. Therefore, the ALJ's finding at step two that Plaintiff did not have a severe mental impairment was not erroneous.

For the reasons set forth above, the ALJ's decision is affirmed and the case is dismissed with prejudice.

IT IS SO ORDERED.

DATED: March  2 , 2008.

PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-Soc Sec\PICKETT, M 1007\Memo_Opinion.wpd

---

[3] Dr. Rodriguez found that Plaintiff was "minimally limited" in relating to supervisors, coworkers, and the public; maintaining concentration, persistence, and pace; associating with day-to-day activity; adapting to the stress of a normal work environment; maintaining regular attendance; and performing work activities without supervision. (AR 258.)